The United States Federal Government is the largest employer in the United States and perhaps the world. On a daily basis they are equipping their employees and agents, tens of thousands of them, with vehicles that are used throughout the world to affect their duties and their associated activities. This creates a tremendous risk to the entire public whether they're on the road or pedestrians nearby the road. When they equipped Mr. Liberatore with his rental vehicle that was paid for by the Navy, they created a risk on the road with Mr. Liberatore driving that car for the purpose of his week-long trip to find out whether or not he was interested in relocating to the Mojave Desert, a remote location where the Navy was having a difficult time staffing that particular command. The state line is a real thing, drinking beer and all of that. Incidental to that purpose of the trip for which he was sent by his employer to California. Well, first of all, it's incidental because his whole purpose of being there is not just to look at the base and to visit the commander there. In fact, the record shows that if he had just been there 10 or 15 minutes to visit with the commander, he would have fulfilled that. He has an entire week in the room. So he doesn't have time on his own to do whatever he wants to do? He could go to Disneyland. He could go to Marine World. He can go to Vegas. You say he's acting within the scope of his employment when he does that? That's correct, because... That's according to California law, isn't it? Yes, Your Honor. It would be because, and again, there's cases that talk both in California and the Federal cases talk about when a seaman having shore leave, the morale that's not only incidental, but it's required for the proper functioning of the military to have their personnel have actual shore leave and time to recreate, time to entertain. Including committing criminal acts. Well, there are cases that talk about that, that even intentional torts can be within the course and scope of employment. Criminal conduct. Right. Mary M. v. L.A. County, the police officer that was found to be in the course and scope of employment, even though he raped, pulled over a woman and raped the woman, while he obviously completely had not contemplated or authorized by the employer, but that's found to be within the course and scope of employment. And so, Mr. Libertor is, yes, he's on his way to Nevada. But actually, the accident doesn't even happen in Nevada. It happens in the very area of his primary focus, which was to really look at this China Lake base. He wanted to see that. And so, it's irrelevant where he intended to go or that he was even going there. The accident happened in the very area where he was going to be traveling in any event. That was the primary area of his travel. And so, you have the girlfriend in the car as well. Well, that's entirely foreseeable. It doesn't matter that she's a girlfriend or what her status is. She might as well have been a pedestrian. She could have been in another car with no relationship. But even if she's a passenger, it's foreseeable that he would have, at some point during this week-long trip, somebody in his car, either from the station or military personnel, perhaps a relative of visiting, something like that. It's entirely foreseeable that he would have somebody in the car and they would be exposed to the same risk as all the other public people on the highway. And so, really, I think what this comes down to is, again, the DUI is what the government is focusing on. And there's cases that say, just because you're DUI does not take you out of course and scope of employment. And a great example is, unfortunately, the Exxon Valdez. If the captain is intoxicated and runs the ship aground, causing billions of dollars in property damage, Exxon would be laughed out of this court if they tried to escape liability saying he was outside the course and scope of his employment. Even if he intended to go to Hawaii, because he had some wild whim, instead of going to his destination in California or wherever it was he was going to deliver the oil, let's say he intended to go to Hawaii, that doesn't matter. Exxon would still have him in the course and scope of employment. He could have had his girlfriend at his side, at the helm, at the time the ship ran aground. Exxon would still be vicariously liable for that accident. And so this case is even closer within the course and scope of employment, because, again, Mr. Libertor was engaging in the precise activities that were contemplated by this broad mission. He has no specific itinerary. He has carte blanche activities with the car. He can go wherever he wants, whenever he wants, visit whoever he wants, no supervision, no type of restrictions on his activities. And so he's absolutely within the course and scope of his employment at the time of the accident. Now, the government also mentions a couple of other areas in their brief regarding the jurisdictional issue. There's a number of cases that say even though this is governed by California law, that the FTCA is a matter of federal question. It doesn't matter that it's being decided by California state law. We are going to address it still as a federal question. There's Supreme Court authority on those points. I can supply those cases. The other point is with respect to the collateral estoppel issue. There were two cases. This is the declaratory relief action. There was the underlying case. Nationwide was not a party to that case and had no control over any of the litigants in that underlying action. And so that's the ultimate criteria for determining privity. There are a number of factors, but it really boils down to that last factor. Nationwide had no control over any of the litigants in the underlying case. And so, again, this case points up the strong public policy of vicarious liability. The United States is the largest employer. They create the most risk to the public by virtue of the volume of cars they put on the road. And I would request that the case be remanded back to state court to determine the reverse and determine what the United States' responsibility is to Nationwide, who has funded the defense of Mr. Libertor and indemnified him to this date. I'll reserve the rest of my time for rebuttal. Thank you. Good morning. I'm Christy Capitan, Assistant United States Attorney, and I represent the United States. My brief obviously has three points and three reasons why I think the appeal should be denied. But I'd like to first address the points that were raised by the appellant just now in court. Essentially what the appellant is urging is strict liability for the United States when its employees are driving anywhere. That's the upshot of what he's arguing. He essentially said that if Mr. Libertor wanted to go to Disneyland, that that trip would have been within the scope of his employment for the military because he was coming out to California. I don't think an examination of California law, as broad as it is, is anywhere near that broad. He brought up the Mary M. case, which is a case concerning police officers. That's a special situation that California has carved out for people in that situation, for police officers. And one of the reasons is because even though he raped a woman, he was still acting as a police officer at that time. Mr. Libertor was not acting as a military person at the time that he committed this act. The standard is, was he in the line of duty for military persons in California for scope? And clearly he was not in the line of duty. As for he would have been on this road anyway argument, actually, on the map, he wouldn't have been on Highway 58. He would have taken 14 straight up from Los Angeles to China Lake. You don't go on 58 unless you're going to State Line Nevada. Therefore, I don't think that under the case law, which is cited and discussed a lot in the briefs, I don't think I need to bring it up again. If you have any specific questions you want me to point to, I'll be happy to discuss them. But otherwise, I think that the cases speak for themselves. And I think that he's urging too great an extension of the existing law for scope of employment. My other two bases, the first bases I bring up is the lack of subject matter jurisdiction. This case was brought as a declaratory relief act. As the Court knows, it's clear that that is not a basis for jurisdiction. In his papers, the appellant also brings up diversity, which, as we know, since the United States is a party, there is no diversity. Had we been out of the case, of course, there would have been diversity. But we're in the case, so there's not. In this case, by bringing the action under the declaratory relief act, there's no support for bootstrapping in the FDCA because of a contract that the third party mentions, the Federal Tort Claims Act. He, nationwide, would not have had a right to sue the United States independently under the Federal Tort Claims Act. We didn't commit a tort against nationwide. Therefore, I don't think that there's a basis for subject matter jurisdiction, and we can avoid the messy issue of scope of employment under California law by holding that there lacks jurisdiction in this case. And do you really want that? I mean, what happens if we dismiss this for lack of jurisdiction? Do you just amend the complaint, or what does he do? That's true. I would prefer to go to the merits of the case and go to scope. Why aren't you going to talk about that? More about scope or why I would prefer it. What would you want? What I want is I want the judgment of the district court to be upheld in its entirety. I think it was a good judgment. I think it followed the law, and that's what I think should happen. And I also have a collateral estoppel argument, but I don't need to make it. If it's not going to assist, it's in the briefs. So I would submit with what I have. If anyone has questions, I'd be happy to answer them. Thank you. Ms. Gaffney, Mr. Laird. Yes. I'm going to submit it also. Thank you. All right. Counsel, thank you for your arguments. The matter just argued will be submitted. And we'll next get your argument in Osborne v. Reader. Thank you.
judges: Noonan, Thompson, Rymer